**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **JUSTINE GUERRERO** | **CASE NO.  6:25-CV-00741** |
| **VERSUS** | **JUDGE S. MAURICE HICKS, JR.** |
| **PHYSICIANS UNITY P A** | **MAGISTRATE JUDGE DAVID J. AYO** |

**REPORT AND RECOMMENDATION**

Before this Court is a RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION filed by Defendant Physicians Unity, P.A. d/b/a WoundCentrics ("WoundCentrics"). [Doc. 26]. Plaintiff Justine Guerrero opposed the motion [Doc. 29], and WoundCentrics replied [Doc. 32]. The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636. Considering the evidence, law, and argument, and for the reasons explained below, this Court recommends that the instant motion be GRANTED IN PART such that this suit be administratively closed and that Guerrero be COMPELLED to arbitrate all claims pursuant to the Alternative Dispute Resolution Agreement ("ADR Agreement") executed by the parties.

**Background**

Guerrero was hired by Louisiana Cardiovascular & Limb Salvage Center as a cardiology physician assistant on or about July 1, 2022. [Doc. 18 at ¶16]. On or about December 1, 2022, WoundCentrics acquired Louisiana Cardiovascular, absorbing the existing employees, operating out of the same building, utilizing the same equipment, and conducting the same type of business as Louisiana Cardiovascular. [*Id.* at ¶18]. WoundCentrics asserts and Guerrero does not contest that, on December 1, 2022, Guerrero electronically completed and submitted an employment application containing the ADR Agreement, by which WoundCentrics and Guerrero agreed to resolve all claims, including

1

but not limited to those for discrimination, retaliation, and/or wrongful discharge based on sex or other legally protected classification, exclusively through mediation and arbitration. [Doc. 26-2 at pp. 6-7].

Guerrero claims that she was discriminated and retaliated against during her employment based on her sex, pregnancy, and request for and use of maternity leave. [Doc. 18 at ¶¶1-2]. Specifically, Guerrero alleges that her annual salary was decreased by $50,000.00 during her pregnancy, she was denied FMLA leave, and her employment was terminated after she delivered her child. [*Id.* at ¶¶21-33]. On June 26, 2023, WoundCentrics notified Guerrero that her employment was terminated, effective June 21, 2023, stating that its reason for her termination was an unforeseeable budget reduction. [*Id.* at ¶¶33-34]. Moreover, Guerrero alleges that she was the only female provider and was the only provider to be laid off at WoundCentrics' Lafayette, Louisiana, location. [*Id.* at ¶34].

Guerrero filed a charge with the Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter on or about February 28, 2025. [Doc. 18 at ¶¶14-15]. Guerrero timely filed the instant suit on May 29, 2025 [Doc. 1] and amended her Complaint on August 20, 2025 [Doc. 18], bringing claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; the Louisiana Employment Discrimination Law, La. R.S. §§ 23:301 *et seq.*; the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*; the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg *et seq.*; and the Louisiana Pregnancy Discrimination Act, La. R.S. §§ 23:341–344. On October 27, 2025, the parties engaged in mediation but did not reach resolution. [Doc. 26-4].

## Applicable Standards

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, established "national policy favoring arbitration of claims that parties contract to settle in that matter[.]" *Polyflow, LLC*

*v. Specialty RTP, LLC*, 993 F.3d 295, 301 (5th Cir. 2021) (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009)). Section 4 of the FAA provides that

> a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28…for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. As directed by Section 4, a district court presented with such a suit must first conduct a "look through" jurisdictional analysis to determine whether, absent an alleged arbitration agreement, it would possess jurisdiction over the underlying claims. *Id.* at 302 (citing *Vaden*, 556 U.S. at 62).

Once the district court is assured of its underlying jurisdiction, analysis of the arbitration agreement may proceed. The court's analysis here is divided into two questions: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Will-Drill Res. v. Samson Res.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal citation omitted).

District courts apply state contract law principles to these questions. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). Louisiana law permits parties to reciprocally bind themselves to arbitration agreements, which are considered "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." La. R.S. § 9:4201; *see also* LA. CIV. CODE ANN. arts. 3099–3100. As is true of all contracts under Louisiana law, confection of a valid and enforceable arbitration agreement requires capacity, consent, a certain object, and a lawful cause. *Wallace v. Shreve Mem'l Library*, 79 F.3d 427, 430 n. 4 (5th Cir. 1996); LA. CIV. CODE ANN. arts. 1918, 1927, 1966, 1971, 2029. Interpretation of the scope of an arbitration agreement is "the determination of

3

the common intent of the parties." LA. CIV. CODE ANN. art. 2045. Courts applying Louisiana law to the interpretation of a contract look first to the plain meaning of the words of the contract, attributing to those words their generally prevailing meaning. LA. CIV. CODE ANN. art. 2047. When words are susceptible of different meanings, the court must ascribe to those words "the meaning that best conforms to the object of the contract." *Prejean v. Guillory*, 38 So. 3d 274, 279 (La. 2010). Where the terms of a contract are clear and lead to no absurd results, no further interpretation may be made. *Id.*, LA. CIV. CODE ANN. art. 2046. Where doubt as to the mutual intent of the parties remains unresolved, the court must interpret the contract against the party who "furnished its text." *Id.*, LA. CIV. CODE ANN. art. 2056. If the parties agreed to submit their dispute to arbitration, the court has no discretion and must "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985).

## Analysis

Guerrero alleges that WoundCentrics discriminated against her on the bases of sex and pregnancy. [Doc. 18]. These claims invoke (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, which prohibits, *inter alia*, a covered employer from discriminating against an employee on the basis of the employee's sex and (2) the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg *et seq.*, which requires employers to make "reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee." Accordingly, the Court possesses jurisdiction over Guerrero's Title VII and Pregnant Workers Fairness Act claims under its federal question jurisdiction. 28 U.S.C. §1331. Because Guerrero's state law claims arise from the same facts as her federal law claims, the Court may exercise supplemental jurisdiction over those claims under the Louisiana Employment Discrimination Law, La. R.S. §§ 23:301 *et seq.*

4

and the Louisiana Pregnancy Discrimination Act, La. R.S. §§ 23:341–344. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

WoundCentrics' motion seeks to compel arbitration of Guerrero's sex and pregnancy discrimination and retaliation claims according to its ADR Agreement, to which WoundCentrics asserts Guerrero agreed when she electronically completed and submitted her application for employment with WoundCentrics on December 1, 2022, after WoundCentrics acquired her former employer. [Doc. 26-3]. The four-page ADR Agreement contains the following language:

> Because the Parties seek a speedy, impartial, and cost-effective method for addressing disputes, they agree to resolve all Claims (as identified below) exclusively through mediation and arbitration, rather than through a jury trial, under the terms of this Agreement. The Parties also agree that, unless permitted herein, no Party will initiate any lawsuit or administrative action (other than a discrimination charge filed with the Equal Employment Opportunity Commission or state fair employment practices agency and an unfair labor practice charge filed with the National Labor Relations Board) related to any covered claim.

[*Id.* at p. 5]. Guerrero does not dispute the authenticity of her signature on the ADR Agreement. Accordingly, Guerrero's signature is unrefuted evidence of her acceptance of the terms and conditions upon which WoundCentrics' offer of employment was based.

Guerrero asserts that "Texas state contract law governs the ADR Agreement," as the Applicant Statement Guerrero executed when completing her application for employment with WoundCentrics stated that Guerrero's "employment [would] be governed by the laws of Texas." [Doc. 26-3 at p. 4]. However, the litigation forum's choice of law rules apply to the determination of whether an agreement exists in the first instance. *See, e.g., Urda v. Valmont Indus. Inc.*, 561 F. Supp. 3d 640, 649 (M.D. La. 2021) ("As a preliminary matter, the Court

must first determine whether a valid and enforceable agreement exists, by application of Louisiana law, before it can enforce the choice-of-law provision in the rental agreement, and apply Washington law."). Therefore, Louisiana law applies in the determination of whether a valid arbitration agreement exists.

Louisiana law permits employers to include arbitration agreements in employment contracts based on the lawful nature of employment as an object of contract. Employees are free to review all included terms and conditions prior to acceptance and are not bound to accept any offer of employment. Moreover, prospective employees may negotiate for terms and conditions they find more appealing or may reject the offer altogether. *Valazquez v. Brand Energy & Infrastructure Servs., Inc.*, 781 F. Supp. 2d 370, 375–76 (W.D. La. 2011) (internal citations omitted). For these reasons, this Court finds that the ADR Agreement constitutes a valid and enforceable arbitration agreement and will now consider whether Guerrero's claims in this suit fall within the scope of the arbitration agreement.

The ADR Agreement specifies that it is applicable to

> all claims of any nature whatsoever that one Party may have against any other Party (collectively referred to as the "Claims"). The Claims covered by this Agreement include, but are not limited to: (1) all Claims relating to Employee's application for employment, employment, or separation from employment; (2) all Claims of discrimination, harassment, or retaliation based on sex, race, color, religion, national origin, disability, veteran status, or other legally protected classification; (3) all Claims of wrongful or retaliatory discharge, infliction or emotional distress, negligent hiring, retention or supervision, defamation, invasion of privacy, fraud, conversion, and breach of covenant of good faith and fair dealing; (4) all tort Claims, including negligence, negligence per se, or gross negligence (including Claims for personal or bodily injury, whether or not sustained on the job); (5) all contact Claims relating to unpaid wages, overtime, commissions, bonuses, severance, vacation pay, sick pay, paid time off, and other compensation; (6) all Claims relating to the administration of or to the payment, denial or discontinuation of benefits under any employee welfare or benefit plan maintained, sponsored, administered or facilitated by Employer; (7) all Claims for violation of any law, statue, [sic] regulation or ordinance; and (8) all Claims arising out of or relating to this Agreement; the Client Service Agreement, or any other agreement between Employee, Employer.

[Doc. 26-3 at p. 5].

By its plain language, the ADR Agreement requires arbitration of employee claims of retaliation and discrimination against WoundCentrics. This Court finds that Guerrero's claims for sex and pregnancy discrimination are "Claims" as that term is defined in the ADR Agreement and, for this reason, are within the scope of the ADR Agreement and subject to arbitration. The undersigned notes that Guerrero does not dispute the scope of the arbitration agreement.

Guerrero argues that, because WoundCentrics has not provided the entirety of every contract into which Guerrero entered when completing her application for employment, this Court may not enforce arbitration. Guerrero does not, however, argue that any portion of the contract(s) not provided would render the ADR Agreement unenforceable. The Court notes that Guerrero did not attach the portions of the contract(s) in support of her argument that the failure to provide these portions create such "ambiguity … that the Court cannot give the parties [sic] agreement a definite or certain legal meaning." [Doc. 29 at p. 2]. Because Guerrero neither argues that the lacking portions would render the ADR Agreement unenforceable nor provides the portions that were not provided to evidence the unenforceability of the ADR Agreement, this argument fails.

Guerrero further argues that arbitration cannot be compelled because a good faith mediation is laid out as a prerequisite to arbitration in the ADR Agreement, and WoundCentrics failed to mediate in good faith. That procedural prerequisite is a question for the arbitrator to decide. *See Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 306-07 (5th Cir. 2021) (holding that the defense that mediation was a condition precedent to arbitration was to be considered by the arbitrator because the defense did not attack the making of the arbitration agreement itself but concerned the parties' obligations under the settlement agreement in which the arbitration agreement was found); *Ace Am. Ins. Co. v.*

7

*Huntsman Corp.*, 255 F.R.D. 179, 211 (S.D. Tex. 2008) ("Courts have held that challenges to whether prerequisites of negotiation or mediation have been met are properly decided by arbitrators, not courts."); *see also BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 35, 134 S. Ct. 1198, 1207, 188 L. Ed. 2d 220 (2014) (explaining that "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration"). Guerrero may raise her argument that WoundCentrics failed to meet its obligation to negotiate in good faith with the arbitrator, but this argument cannot relieve the Court of enforcing the parties' arbitration clause.

Where, as here, all claims asserted fall within the scope of a valid, enforceable arbitration agreement, this Court will recommend administrative closure to enable the parties to reopen the case if further court review of any aspect of arbitration is warranted. *Smith v. Spizzirri*, 601 U.S. 472, 476, 144 S. Ct. 1173 (2024) (where all claims are subject to arbitration and one or more parties has requested a stay, dismissal is improper); *Sewell v. Waitr Holdings, Inc.*, 2020 WL 208929 (W.D. La. 2020) (recognizing some ambiguity in Fifth Circuit jurisprudence concerning dismissal of cases upon a finding that all claims are subject to arbitration).

## Conclusion

For the reasons discussed herein, the Court recommends that Physicians Unity, P.A. d/b/a WoundCentrics' RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION [Doc. 26] be GRANTED IN PART based on a finding that all claims by Plaintiff Justine Guerrero in this suit fall within the scope of a valid, enforceable arbitration agreement executed among the parties and are, therefore subject to arbitration.  It is further recommended that the motion be DENIED IN PART to the extent it seeks dismissal of Guerrero's suit, in lieu of which it is further

recommended that the Clerk of Court be ordered to administratively close this case in his records without prejudice to the right of either party to reopen the proceedings, vacating any pending scheduling order in this matter.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.

Signed at Lafayette, Louisiana on this 12th day of May, 2026.

David J. Ayo
United States Magistrate Judge

9